# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren Hart,  :
            Appellant  :
  :
     v.  :  No. 107 C.D. 2016
  :  Submitted: September 2, 2016
Bulldawg LLC and  :
City of Philadelphia,  :
Department of Revenue  :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: February 14, 2017**


Appellant Darren Hart (Hart) appeals *pro se* from an order of the Court of Common Pleas of Philadelphia County (trial court), dated June 16, 2015, denying his petition to set aside a tax sale of real property. The City of Philadelphia (City) conducted the tax sale pursuant to what is commonly referred to as the Municipal Claims and Tax Liens Act, Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505 (MCTLA).[1] For the reasons set forth below, we now vacate the trial court's order and remand the matter.

---

[1] Hart initially filed his appeal with the Superior Court of Pennsylvania. The Superior Court, however, transferred the appeal to this Court, because this case involves the MCTLA and involves the City of Philadelphia as a party. *See* Pa. R.A.P. 751; 42 Pa. C.S. § 762(a)(4).

The underlying dispute involves delinquent real estate taxes beginning with the 2011 tax year for property located at 26 Apsley Street, Philadelphia, Pennsylvania (the Property). (Certified Record (C.R.), Item No. 9 at Ex. A.) Hart purchased the Property in 2013 for $20,000. (Supplemental Reproduced Record (S.R.R.) at 24b.)

On July 21, 2014, the City petitioned the trial court for a rule to show cause why the Property should not be sold free and clear of all encumbrances at a sheriff's sale pursuant to the MCTLA for unpaid real estate taxes.[2] (C.R., Item No. 1.) On September 18, 2014, the trial court granted the City's petition and issued a rule to show cause why a decree should not be entered permitting the sale of the Property free and clear of all liens and encumbrances. (C.R., Item No. 2.) On October 31, 2014, the City filed an affidavit of sheriff's service, stating that the Property had been posted with notice of the petition and rule to show cause. (S.R.R. at 41b.) The City also filed an affidavit of service, stating that the petition and rule to show cause had been sent by certified and first class mail to Hart. (*Id.* at 37b.) After receiving no response, the trial court issued a decree on December 31, 2014, permitting the City to sell the Property at a sheriff's sale. (*Id.* at 36b.) On January 29, 2015, the City served Hart with notice of the sheriff's

---

[2] Attached to the petition is a document entitled "Taxpayer Information System Real Estate Account Profile," dated July 21, 2014, which shows outstanding real estate taxes, interest, and penalties for tax years 2011-2015 in the amount of $1,839.76, $1,783.31, $1,696.10, $681.79, and $1,045.20, respectively. We note, however, that not all of those amounts were due or sufficiently delinquent to warrant action by the City at the time of the filing of the petition. *See* Section 39.4 of the MCTLA, added by the Act of December 14, 1992, P.L. 859, 53 P.S. § 7193.4 ("Cities of the first class shall proceed on tax claims after one year of delinquency, unless the owner or an interested party enters into a payment agreement suitable to the claimant.") The record is unclear as to the exact amount sought by the City through its petition and tax sale, but the amount of $7,046.16 appears in various places throughout the record.

sale. (*Id.* at 42b.) On February 18, 2015, the Property was sold at the sheriff's sale. (C.R., Item No. 10, at ¶9.) The only bidder, Bulldawg LLC, purchased the Property for the amount of $1,100. (*Id.*)

On March 10, 2015, Hart filed a petition to set aside the sheriff's sale, alleging he did not receive notice from the posting, first class mail, or certified mail. (C.R., Item No. 7, at ¶10.) On March 20, 2015, the sheriff's deed was acknowledged. (C.R., Item No. 9, at Ex. A.) On March 27, 2015, the City filed an answer to Hart's petition to set aside. (C.R., Item No. 9.) The City attached to its answer a certified mail receipt which indicated that delivery of the petition and rule to show cause was made to Hart's address and included Hart's signature. (*Id.* at Ex. F.) Then on April 1, 2015, the sheriff's deed reflecting Bulldawg LLC's ownership of the Property was recorded. (C.R., Item No. 11 at Ex. A.)

On April 13, 2015, Hart amended his petition to set aside the sheriff's sale. (C.R., Item No. 10.) In his amended petition, Hart argued first that Bulldawg LLC installed a security gate while trespassing on the Property, preventing Hart from entering the Property. (*Id.* at ¶11.) Hart also argued that the fair market value of the Property exceeds $78,000 and that the bid price of $1,100 at the sheriff's sale was grossly inadequate. (*Id.* at ¶¶12-14.) Hart argued that, in light of the trespass and gross inadequacy of the bid price, failure to set aside the sheriff's sale would "constitute a gross miscarriage of equitable justice." (*Id.* at ¶15.) In his amended petition to set aside, Hart did not contest notice. (C.R., Item No. 10.)

On May 4, 2015, the City filed an answer to Hart's amended petition. (C.R., Item No. 11.) The City argued that it would be prejudiced if the sale was set

aside and that there was no indication that Hart would pay the delinquent taxes that he failed to pay in the past. (*Id.* at ¶16.)

The trial court held a hearing on the amended petition to set aside on June 9, 2015. At the hearing, Hart testified that he was willing to pay the delinquent taxes or enter into a payment plan if the sale was set aside. (S.R.R. at 19b.) Hart also reiterated the argument that the bid price was approximately 2% of the fair market value of the Property and, thus, was grossly inadequate. (*Id.*) Hart, by his attorney, argued that "for sales less than [10%], that has typically been found to be grossly inadequate." (*Id.* at 23b). Hart testified that the bulk of the money due was for an unpaid water bill. (*Id.* at 27b.) The City's attorney refuted Hart's contention that this case originated from a water bill and stated that there is a separate procedure for unpaid water bills—thus the matter before the trial court was exclusively a result of delinquent taxes. (*Id.*) The City also argued that Hart was not entitled to relief from the sale under the MCTLA. (*Id.* at 21b-22b.)

The trial court's order, dated June 15, 2015, denied Hart's petition to set aside the tax sale. (C.R., Item No. 10.) In an opinion dated October 7, 2015, the trial court reasoned that, despite the low bid price of $1,100 in comparison to the alleged fair market value of $78,000, Hart did not offer evidence to support the alleged fair market value. (S.R.R. at 34b.) Specifically, the trial court noted that while Hart attached supporting documents to his pleadings, Hart did not introduce any evidence at the hearing regarding the alleged gross inadequacy of the bid price compared to the fair market value. (*Id.*) The trial court also noted that, pursuant to Rule 3132 of the Pennsylvania Rules of Civil Procedure, it was unable to set aside the sheriff's sale, because, by the time of the hearing on June 9, 2015, the sheriff's

4

deed had been delivered. (*Id.*[3] (citing *First Union Nat. Bank v. Estate of Shevlin*, 897 A.2d 1241, 1246 (Pa. Super. 2006).) Thus, the trial court reasoned, Hart's petition to set aside was untimely. (*Id.*)

On appeal,[4] Hart contends that the trial court abused its discretion by failing to consider an exhibit to the petition to set aside tax sale as evidence of the Property's fair market value and by failing to arrive at any conclusion as to the Property's fair market value. Hart also contends that the trial court abused its discretion or erred as a matter of law in denying his petition to set aside the tax sale of the Property, because the consideration received for the Property was grossly inadequate.

---

[3] Rule 3132 provides:

> Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa. R.C.P. No. 3132. The dissent challenges applicability of Rule 3132 to judicial sales arising from a municipal tax lien under the MCTLA. The dissent's position, however, conflicts with Court precedent. This Court has expressly held that the petition to set aside procedure set forth in the Pennsylvania Rules of Civil Procedure is the appropriate vehicle to set aside a judicial sale under the MCTLA. *See U.S. Nat'l Bank Ass'n v. United Hands Cmty. Land Trust*, 129 A.3d 627 (Pa. Cmwlth. 2015); *Allegheny Cnty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1247 (Pa. Cmwlth. 2009) (setting aside judicial sale arising from MCTLA claim). Further, we note that the MCTLA does not contain any provisions relating to how a judicial sale must be conducted or the circumstances under which a court may set it aside. In such a circumstance, the Pennsylvania Rules of Civil Procedure may be used to fill the procedural gap. *See Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 Univ. Dr.*, 104 A.3d 411, 427 (Pa. 2014).

[4] "This Court's review in tax sale cases is limited to a determination of whether the trial court abused its discretion, erred as a matter of law or rendered a decision with lack of supporting evidence." *Wiles v. Washington Cnty. Tax Claim Bureau*, 972 A.2d 24, 28 n.2 (Pa. Cmwlth. 2009).

5

In response, the City argues that the trial court aptly denied the petition to set aside the sheriff's sale because Hart failed to introduce any evidence, including the value estimates attached to his pleadings, to establish a fair market value of the Property during the evidentiary hearing. The City also argues that under *First Federal Savings and Loan Association v. Swift*, 321 A.2d 895 (Pa. 1974), where a statutorily satisfactory price has been obtained at a public sale, there is no basis for a finding of unjust enrichment that would warrant setting aside the sale. The City further argues that the MCTLA provides all of the rights of the parties involved in this tax sale, and the MCTLA does not provide a basis for setting aside a sale based on gross inadequacy of the bid price.

As an initial matter, we note that the trial court was mistaken in its assertion that Hart's petition was untimely. Under Pennsylvania Rule of Civil Procedure No. 3132, "a petition to set aside a sheriff's sale may only be granted when the *petition is filed* before the sheriff's delivery of the deed." *Deutsche Bank Nat'l Co. v. Butler*, 868 A.2d 574, 578 (Pa. Super. 2005) (emphasis added). The recording of a deed raises the presumption of the deed's validity. *Stiegelmann v. Ackman*, 41 A.2d 679, 681 (Pa. 1945). Here, Hart filed his initial petition on March 10, 2015, before the deed was delivered on April 1, 2015. The petition to set aside, therefore, was timely.

Where a sale is challenged based upon the adequacy of the price, our courts have frequently held that mere inadequacy of price, standing alone, is not a sufficient basis for setting aside a sheriff's sale. *Allegheny Cnty.*, 974 A.2d at 1247 (citing *Provident Nat'l Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa. Super. 2003)). Where a gross inadequacy exists, however, courts have found proper

6

grounds to set aside a sheriff's sale, and each case is determined on its own facts.[5] *Allegheny Cnty.*, 974 A.2d at 1247. The presumption exists that the price received at a public sale is the highest and best available. *Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 166-67 (Pa. Super. 2002), *appeal denied*, 820 A.2d (Pa. 2003). While a court may assess the property's value based on competent evidence, such as an accurate appraisal by experts, a mere assertion of the value of a property by a party is insufficient to overcome this presumption. *Cont'l Bank v. Frank*, 495 A.2d 565, 569 (Pa. Super. 1985).

Here, there is no evidence in the hearing record that the sale price of the Property was grossly inadequate based on a figure of $78,000. The claim that the current value of the Property is $78,000 or greater is unsubstantiated. Hart alleged that the Property had a fair market value of approximately $78,000 to $100,000, pointing to two documents attached to his petition to set aside. Hart failed to introduce those documents or any other evidence of the fair market value of the Property during the evidentiary hearing. Evidence proffered in pleadings does not constitute evidence of record for the Court to consider. *Churilla v. Barner*, 409 A.2d 83, 86 n.6 (Pa. Super. 1979). The trial court, therefore, did not err in determining that the alleged fair market value of $78,000 to $100,000 was not supported by evidence.

---

[5] We note that in cases involving grossly inadequate sale prices, the courts have typically examined sheriff's sales in mortgage foreclosure proceedings as opposed to tax sales, and the City argues that tax sales can never be set aside under the MCTLA for gross inadequacy. We observe, however, that this Court set aside a tax sale based on a grossly inadequate price where irregularities in the sale contributed to the grossly inadequate price. *Allegheny Cnty.*, 974 A.2d at 1247-1248. This Court, therefore, rejects the City's argument as without merit.

Hart testified, however, that he purchased the Property in 2013 for $20,000. (S.R.R. at 24b.) Hart argues for the first time on appeal that, at the very least, the tax sale should be set aside based on the 2013 purchase price of $20,000. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). This rule pertains to the preservation of *issues*, and does not require a litigant to make identical arguments at each stage of his case. *Wert v. Dep't of Transp., Bureau of Driver Licensing*, 821 A.2d 182, 186 n.9 (Pa. Cmwlth. 2003). Pertinent to this appeal, Hart did raise the issue below that the tax sale should be set aside because tax sale price was less than 10% of the alleged fair market value of the Property. The trial court received evidence at the hearing that the tax sale price was less than 10% of the alleged fair market value, because the sale price of $1,100 is less than 10% of the 2013 purchase price of $20,000. While we note that the "term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage," *Scott v. Adal Corporation*, 509 A.2d 1279, 1283 (Pa. Super. 1986), Hart did provide the trial court with evidence at the hearing of the alleged fair market value of $20,000 and did preserve the issue of gross inadequacy. The trial court erred by failing to evaluate the evidence and determine if the sale price was grossly inadequate in light of the evidence at the hearing.

Accordingly, we vacate the order of the trial court and remand for issuance of new determination of whether the tax sale should be set aside for gross inadequacy.

_____
P. KEVIN BROBSON, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren Hart,                                    :
                    Appellant          :
                                    :

            v.                         :  No. 107 C.D. 2016
                                    :

Bulldawg LLC and                               :
City of Philadelphia,                          :
Department of Revenue                          :

## O R D E R

AND NOW, this 14th day of February, 2017, the order of the Court of Common Pleas of Philadelphia County is hereby VACATED, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren Hart,                          :
                 Appellant            :
                                      :
        v.                            : No. 107 C.D. 2016
                                      : Submitted:  September 2, 2016
Bulldawg, LLC and City of             :
Philadelphia, Department of Revenue  :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI                  FILED: February 14, 2017


        Because the courts have not been given the power to set aside a properly advertised sheriff sale of property for delinquent real estate taxes because the sale price was purportedly "grossly inadequate," I respectfully dissent.

        There is no dispute that Hart, the delinquent property owner, had proper notice that his property was going to be sold at a "free and clear" sheriff sale pursuant to the terms of the Municipal Claims and Tax Liens Act, Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505 (MCTLA).  The sale was held on February 18, 2015, and the property was sold for $1,100.  Based on Hart's testimony that he purchased the property for $20,000 sometime in 2013 from "a private owner, still under agreement," the majority remands to the trial court to

evaluate the evidence to determine whether the $1,100 sale price was "grossly inadequate."

Generally, setting aside a sheriff sale because the price bid was "grossly inadequate" has only been applied to those sales conducted to collect a private debt, not to collect real estate taxes under the scheme set forth under the MCTLA. That is so because courts are given the power to set aside a sheriff sale conducted to collect a debt where, "upon proper cause shown," the court deems it "just and proper under the circumstances." Pa. R.C.P. No. 3132. *Blue Ball National Bank v. Balmer*, 810 A.2d 164, 166 (Pa. Super. 2002). To establish "just and proper cause"

> [w]here a sale is challenged based upon the adequacy of the price our courts have frequently said that mere inadequacy of price standing alone is not a sufficient basis for setting aside a sheriff's sale. However, where a 'gross inadequacy' in the price is established courts have found proper grounds exist to set aside a sheriff's sale. The courts have traditionally looked at each case on its own facts. It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale. **Further it is presumed that the price received at a duly advertised public sale is the highest and best obtainable.**

*Provident National Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa. Super. 2003) (emphasis added, citations omitted) (quoting *Balmer*, 810 A.2d at 166-67).

As can be seen, when the sheriff sells property to settle money debts, the ability of the courts to set aside a tax sale because the price was "grossly inadequate" comes from Pa. R.C.P. No. 3132. This Rule is part of provisions in the Rules dealing with "The Enforcement of Money Damages For the Payment of Money" set forth at Pa. R.C.P No. 3101-3149. Those Rules are only applicable to the payment of a "judgment" which is defined as a "judgment" or order requiring the payment of money entered in any court which is subject to these rules. Pa. R. C. P. 3101. Those Rules set forth how notice is to be given, how sales are to be conducted, and gives courts the equitable power contained in Pa. R.C.P. No. 3132 to set aside a sheriff sale for "just and proper cause."

This sheriff sale, though, was not conducted under those Rules but under the MCTLA. That Act contains a detailed statutory scheme that a taxing body must follow to sell property for unpaid taxes and steps that a delinquent taxpayer must take to forestall a sale and under what conditions the tax sale may be set aside. None of those provisions give the court the equitable power to set aside a sale if it is "just and proper." As our Supreme Court stated in *First Federal Savings & Loan Association of Lancaster v. Swift*, 321 A.2d 895, 898 (Pa. 1974):

> The rights of all parties to a tax sale are defined and governed by statute. '(W)henever there is a direct rule of law governing the case in all its circumstances, the (equity) court is as much bound by it as would be a court of law. ...' Where, as here, the parties' rights are regulated and fixed by a comprehensive scheme of legislation, the maxim 'equity follows the law' is entitled to the greatest deference.

DRP - 3

(Citations omitted.) Moreover, Rules dealing with "The Enforcement of Money Damages For the Payment of Money" set forth at Pa. R.C.P No. 3101-3149 cannot be extended to tax sales because, by definition, they are limited to sales relating to the payment of a "judgment," defined as a "judgment" or order requiring the payment of money entered in any court which is subject to these rules. Pa. R. C. P. 3101.

Because the MCTLA does not allow courts to set aside a tax sale because the court may believe the price obtained at the sale is grossly inadequate, it cannot be used to set aside a sale otherwise conducted in accordance with the MCTLA.

There is one tax sale case though, *Allegheny County v. Golf Resort, Inc*., 974 A.2d 1242, 1247 (Pa. Cmwlth. 2009), citing to the previous quoted material from *Provident National Bank*, that seemingly applies the grossly inadequate sales price to set aside a sheriff sale involving rather egregious facts. However, that grossly inadequate price was not the price bid at the duly-advertised sheriff sale but the price bid at a second sheriff sale that occurred under questionable circumstances.

What happened is that at the initial duly-advertised sheriff sale, the delinquent property sold for $140,000. The original bidder went to the sheriff's office and forfeited his bid. The county's attorney, who was responsible for sheriff sales but who also represented the forfeiting bidder in the past, then showed up without being called by the sheriff's department. He directed that an immediate,

unadvertised re-exposure to the public sale be conducted with only the forfeiter's family member present to bid on the property. That resulted in a sheriff sale price of $39,599, well below the presumed highest and best price, which we stated was the $140,000 that was bid at the original sale. Notice that what was being compared was the bid price of the original sale and the second irregular sheriff sale price without any reference to the market value of the property. All that *Golf Resort* stands for is that when you have an irregular sheriff sale that results in a much lower price than the one bid at the original duly-advertised sheriff sale, the sale can be set aside for that reason and a host of others.

For the foregoing reason, I respectfully dissent.

_____
DAN PELLEGRINI, Senior Judge